# United States Court of Appeals for the Federal Circuit

04-3086

WILLEMA HARDY,

Petitioner,

v.

DEPARTMENT OF THE NAVY,

Respondent.

Richard H. Semsker, Lippman & Semsker, PLLC, of Bethesda, Maryland, argued for petitioner. With him on the brief was S. Micah Salb.

Claudia Burke, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With her on the brief were Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; and James M. Kinsella, Deputy Director.

Appealed from: United States Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

04-3086

WILLEMA HARDY,

Petitioner,

v.

DEPARTMENT OF THE NAVY,

Respondent.

_____

DECIDED:  January 4, 2005

_____


Before MICHEL[*], <u>Chief Judge</u>, ARCHER, <u>Senior Circuit Judge</u>, and SCHALL, <u>Circuit Judge</u>.

MICHEL, <u>Chief Judge</u>.


Willema Hardy ("Hardy") petitions for review of the final decision of the Merit Systems Protection Board ("Board"), upholding the Department of the Navy's ("Navy's") reassignment offer to Hardy during a reduction in force ("RIF") after her former position was abolished and she was reached for release.  <u>Hardy v. Dep't of the Navy</u>, No. DC0351030294-I-1 (M.S.P.B. Aug. 27, 2003) ("<u>Decision</u>").[1]  The appeal was

_____

[*]        Chief Judge Paul R. Michel assumed the position of Chief Judge on December 25, 2004.

[1]        Because Hardy did not challenge the initial decision, it became the final decision of the Board on October 1, 2003.  <u>See</u> <u>Wood v. Merit Sys. Prot. Bd.</u>, 938 F.2d 1280 (Fed. Cir. 1991); 5 C.F.R. § 1201.113.  Accordingly, we refer to the initial decision herein as "<u>Decision</u>."

submitted after oral argument on November 4, 2004. Because the Board correctly construed the Office of Personnel Management's ("OPM's") RIF regulations and properly concluded that the Navy complied with those regulations in offering to place Hardy in a vacancy at a lower grade when higher-graded positions were also vacant, we affirm.

## I.    BACKGROUND

Hardy worked as a Telecommunications Specialist GS 391-11 ("Specialist 11") for the Navy at the Naval District Washington. In May 2002, the Navy initiated a functional analysis study of the information technology and telecommunications divisions at its Washington, D.C. location. Based upon the results of that study, the Navy decided to eliminate the entire telecommunications division, which consisted of five employees, including Hardy.

On October 16, 2002, the Navy notified Hardy that her position was being abolished pursuant to a RIF. The Navy offered to place Hardy in a vacant Secretary GS 310-07 position ("Secretary 07"). Hardy challenged this offer by requesting review by the Board, contending that she was qualified for and therefore entitled to the higher-graded vacant positions of Customer Relations Manager 2210-11 ("Manager 11") and Secretary GS 318-09 ("Secretary 09").

The Administrative Judge ("AJ") assigned to her case conducted a hearing at Hardy's request and issued an initial determination that Hardy was not entitled to either the Manager 11 or the Secretary 09 positions. The AJ observed that a released employee does not have assignment rights to a vacant position. Decision at 4. The AJ recognized that an agency may, however, implement a mandatory policy or promulgate

its own regulation to offer vacant positions to RIF-displaced employees. Id. Nevertheless, the AJ noted that it was undisputed that the Navy did not have such a policy or such an agency regulation. Id. at 5. Thus, the AJ concluded that the Navy could exercise complete discretion in considering RIF-displaced employees for vacancies and that Hardy was not entitled to either the vacant Manager 11 position or the vacant Secretary 09 position. Id.

Despite reaching this conclusion, the AJ went on to address the hypothetical situation where the Navy had adopted such a policy. The AJ considered whether in that event Hardy would be entitled to either the vacant Manager 11 position or the vacant Secretary 09 position. Id. In doing so, the AJ evaluated whether Hardy could exercise bump or retreat assignment rights under 5 C.F.R. § 351.701(b) or (c), respectively, ultimately concluding that Hardy could not meet the criteria for exercising these rights. Id. at 6. The AJ found that Hardy did not have bump rights under section 351.701(b) because there was no assertion that Hardy had higher tenure group or subgroup standing than another employee assigned to the vacant positions. Id. The AJ also found that Hardy did not have retreat rights under section 351.701(c) because neither the Manager 11 position nor the Secretary 09 position was the same, or essentially identical to, her former Specialist 11 position. Id. at 15, 18. Accordingly, the AJ concluded that the Navy properly applied the applicable RIF procedures in offering to place Hardy in the vacant Secretary 07 position. Id. at 18.

As noted above, Hardy did not challenge the AJ's initial decision, whereby it became the final decision of the Board. Hardy now petitions for review of the Board's decision, asserting she is qualified for the Manager 11 and Secretary 09 positions.

3

Hardy seeks to be placed into the position of either Manager 11 or Secretary 09 and to be awarded back pay starting from the date that she was not offered these positions. We have jurisdiction over a final Board decision pursuant to 5 U.S.C. § 7703(b)(1).

## II. DISCUSSION

Hardy recognizes that under part 351 of 5 C.F.R., the Navy had discretion in choosing whether to fill vacant positions with RIF-displaced employees. She argues, however, that once the Navy decided to fill vacancies with RIF-displaced employees, she was entitled to an offer of placement in either the Manager 11 or Secretary 09 positions if she established her qualifications for those positions by satisfying the requirements set forth in section 351.703.[2] In this regard, Hardy claims that the substantial weight of the evidence readily demonstrates that she met both the education requirement and the capacity, adaptability, and special skills requirements contained within section 351.703. Thus, in essence, Hardy appears to contend that section 351.703 alone establishes entitlement to a vacancy of her choosing.

Hardy's argument is entirely off the mark. Section 351.703 does not independently confer any assignment rights to vacancies on a RIF-displaced employee. Rather, section 351.703 is a dependent provision that only comes into play during a RIF

---

[2] Section 351.703 states:

An agency may assign an employee to a vacant position under § 351.201(b) or § 351.701 of this part without regard to OPM's standards and requirements for the position if:
(a) The employee meets any minimum education requirement for the position; and
(b) The agency determines that the employee has the capacity, adaptability, and special skills needed to satisfactorily perform the duties and responsibilities of the position.

4

action by way of 5 C.F.R. §§ 351.201, 351.704, and 351.701. Nevertheless, Hardy entirely ignores these sections, relying exclusively on section 351.703.

When sections 351.201, 351.704, and 351.701 are applied in this case, none confer any assignment rights on Hardy, just as the Board found. Section 351.201 is directed generally to the applicability of the RIF regulations. Section 351.201(b) affords an agency discretion in deciding whether to fill vacancies with RIF-displaced employees, stating in pertinent part: "This part does not require an agency to fill a vacant position." 5 C.F.R. § 351.201(b); see also Madsen v. Veterans Admin., 754 F.2d 343, 345 (Fed. Cir. 1985) (holding that an agency is not required to fill vacant positions in conducting a RIF). Section 351.704(a)(1) echoes the discretion afforded to an agency in filling vacancies during a RIF, stating in pertinent part: "An agency may also offer an employee assignment under § 351.201(b) to a vacant position in lieu of separation by reduction in force under 5 CFR part 351." (Emphasis added).

As just noted, section 351.703 provides that when an agency exercises its discretion under sections 351.201(b) and 351.704(a)(1) to place a RIF-displaced employee in a vacant position, it is permitted to do so even if the placement does not comply with normal OPM standards and requirements for the position. Section 351.703 states that "[a]n agency may assign an employee to a vacant position under § 351.201(b) . . . of this part without regard to OPM's standards and requirements for the position" if specified conditions are met. (Emphasis added). In short, section 351.703 makes it easier to move a RIF-displaced employee into a vacant position if the agency wishes in its discretion to do so. It does not, however, grant a RIF-displaced employee any rights to a vacant position.

5

The only exception is where the agency, on its own, has adopted an agency regulation or mandatory policy of placing RIF-displaced employees in available vacancies. Spartin v. Gov't Printing Office, 46 M.S.P.R. 119, 123 (M.S.P.B. 1990), aff'd, 937 F.2d 623 (Fed. Cir. 1991) (Table) (holding that an agency is not obligated to offer vacancies to employees subject to a RIF action, absent a mandatory policy requiring an agency to fill vacant positions in lieu of separating RIF-displaced employees). Hardy has not alleged that the Navy had such a regulation or policy. The Navy, consequently, could have elected to fill the vacancies sought by Hardy before, during, or after the RIF with RIF-displaced employees. Alternatively, the Navy just as permissibly could have elected not to fill any of the vacancies in dispute or to fill them with outside applicants. On this basis, we conclude that the Board correctly determined that Hardy was not entitled to an offer of placement in either the vacant Manager 11 or Secretary 09 positions.

Nevertheless, the Navy, exercising its discretion, voluntarily offered to place Hardy into the vacant Secretary 07 position rather than release her from service. Having made this choice, the Navy was bound to follow applicable provisions of part 351. Section 351.201(b) states in pertinent part: "[W]hen an agency, at its discretion, chooses to fill a vacancy by an employee who has been reached for release from a competitive level for one of the reasons in paragraph (a)(2) of this section, this part shall be followed." (Emphasis added). Thus, the issue on appeal is whether the Navy followed part 351 in offering to place Hardy in the Secretary 07 position as opposed to the Manager 11 or Secretary 09 positions.

Section 351.704 addresses the basic requirements that an agency must fulfill when it exercises its discretion to place a RIF-displaced employee in a vacant position. Section 351.704(a)(1) states in pertinent part: "Any offer of assignment under §351.201(b) to a vacant position must meet the requirements set forth under § 351.701."

Section 351.701 sets forth the general assignment rights for a RIF-displaced employee. Section 351.701 provides in paragraph (a) as follows:

> When a group I or II competitive service employee with a current annual performance rating of record of minimally successful (Level 2) or equivalent, or higher, is released from a competitive level, an agency shall offer assignment, rather than furlough or separate, in accordance with paragraphs (b), (c), and (d) or this section to another competitive position which requires no reduction, or the lease [sic] possible reduction, in representative rate. The employee must be qualified for the offered position. The offered position shall be in the same competitive area, last at least 3 months, and have the same type of work schedule (e.g., full-time, part-time, intermittent, or seasonal) as the position from which the employee is released. Upon accepting an offer of assignment, or displacing another employee under this part, an employee retains the same status and tenure in the new position. The promotion potential of the offered position is not a consideration in determining an employee's rights of assignment.

Paragraphs (b) and (c) of section 351.701 relate to bump and retreat rights, respectively.[3] Paragraph (d) qualifies the retreat rights set forth in paragraph (c). Other

---

[3] According to section 351.701(b):

A released employee shall be assigned in accordance with paragraph (a) of this section and bump to a position that:
(1) Is held by another employee in a lower tenure group or in a lower subgroup within the same tenure group; and
(2) Is no more than three grades (or appropriate grade intervals or equivalent) below the position from which the employee was released.

paragraphs of section 351.701 relate to pay rates (paragraph (e)) and the determination of applicable grades (or grade intervals) under sections 351.701(b)(2) and 351.701(c)(2) (paragraph (f)).

While section 351.704(a)(1) explicitly refers to section 351.701, this section does not seem to have any substantive application in situations involving an offer of assignment to a vacant position. The reason is that section 351.701, beginning with its title "Assignment Involving Displacement," appears to be devoted to the situation in which an employee subject to a RIF displaces another employee by exercising bump or retreat rights. It does not say anything about the right of a RIF-displaced employee to be offered a vacant position, the subject addressed in section 351.704(a). The only possible connection between section 351.701 and section 351.704(a)(1) would be paragraph (a) of section 351.701, which states, in pertinent part, that "the employee must be qualified for the offered position." This paragraph may suggest that a RIF-displaced employee can only be placed into a vacancy position for which he is qualified under section 351.703. However, we need not and do not so decide here, but leave this issue for another day.

---

According to section 351.701(c):

> A released employee shall be assigned in accordance with paragraphs (a) and (d) of this section and retreat to a position that:
> (1) Is held by another employee with lower retention standing in the same tenure group and subgroup; and
> (2) Is not more than three grades (or appropriate grade intervals or equivalent) below the position from which the employee was released . . . ; and
> (3) Is the same position, or an essentially identical position, formerly held by the released employee on a permanent basis as a competing employee in a Federal agency . . . .

8

Under both paragraphs (b) and (c) of section 351.701, a RIF-displaced employee can only exercise assignment rights to a position that is "held by another employee." A discretionary offer of assignment to a vacant position, which is all that is at issue in this case, cannot involve displacement of an incumbent employee. In any event, Hardy has never asserted that she was entitled to an encumbered position by reason of bump or retreat rights. Indeed, she could not, because the Manager 11 and Secretary 09 positions were vacant. Nor does Hardy argue section 351.701 otherwise supports her claim.

This conclusion, however, does not end our analysis. Despite not being clearly argued by Hardy, we still consider whether the Navy was obligated by any other provision of part 351 to offer Hardy placement in either of the two higher-graded vacancies. We conclude that no provision of the RIF regulations obligates an agency to offer placement in the highest-graded available vacancy. To the contrary, sections 351.201(b) and 351.704(a)(1) affirmatively provide complete discretion whether and how to fill vacancies during a RIF action. We have not been cited to, nor are we aware of, any RIF regulation that even implicitly obligates the agency to offer placement to the RIF-displaced employee in the highest-grade vacant position; the RIF regulations instead only obligate the agency to conform any discretionary assignment offer to section 351.701(a), meaning, at most, to evaluate qualifications for its chosen vacancy under section 351.703. An agency, therefore, can offer to place a RIF-displaced, but qualified, employee in any, all, or none of the vacancies without violating part 351.

We also note that any requirement that an agency place a RIF-displaced employee in the highest-grade available vacancy could defeat the purpose of many RIF

9

actions. Often, a government agency reduces the size of its workforce to match the available salary dollars appropriated by Congress. See Int'l Fed'n of Prof'l & Technical Eng'rs, 8 F.L.R.A. 212, 213 (1982) (noting that prerequisite conditions for a RIF include lack of work, shortage of funds, or agency reorganization). If an agency were required under the RIF regulations to offer to place every RIF-displaced employee in the highest-grade available vacancy for which such employee is qualified, then the agency might not be able to reduce its salary expenditures. Hence, an agency must be free to restructure its work force to meet the constraints placed upon it by Congress, including by not filling vacancies or only filling lower-grade and lower-pay vacancies. Any contrary interpretation of the RIF regulations, then, would be illogical and dysfunctional.

We thus conclude that Hardy has no legal basis for her challenge. The Navy was neither obligated under a mandatory policy nor under an agency regulation to offer Hardy placement in a vacant position. Having opted in its discretion to try to do so, the Navy was not required to offer her placement in all vacant positions for which she was qualified. Instead, the Navy was entitled to elect whether to offer Hardy any, all, or none of those vacant positions. Accordingly, we conclude that the Board's decision upholding the Navy's offer to assign Hardy to the Secretary 07 position, but not the Manager 11 or Secretary 09 positions, must be

AFFIRMED